NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0513n.06

Filed: August 20, 2008

No. 06-4437

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ALEXANDER GONZALES,

     Petitioner-Appellant,

v.

JEFFREY WOLFE, Warden,

     Respondent-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

_____/

BEFORE:    MOORE and CLAY, Circuit Judges; and SCHWARZER, District Judge.[*]

    **CLAY, Circuit Judge.** Alexander Gonzales appeals the district court's denial of his petition

for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 in which he seeks relief from his

conviction and sentence for possessing and trafficking in cocaine in violation of sections

2925.03(A)(1) and 2925.11(A) of the Ohio Revised Code. For the reasons given below, this Court

**AFFIRMS** the district court's denial of Gonzales' petition for writ of habeas corpus.

---

[*]The Honorable William W Schwarzer, United States District Judge for the Northern District of California,
sitting by designation.

## BACKGROUND

**A.     Substantive Facts**

In 1996, Alexander Gonzales began transporting cocaine from New York City to Cincinnati, Ohio, concealing the drugs in a hidden compartment in Manuel Rodriguez's car. *State v. Gonzales*, 783 N.E.2d 903, 907 (Ohio Ct. App. 2002). Gonzales would purchase cocaine in New York, drive to Cincinnati, and give the drugs to a local distributor to sell. *Id.* Rodriguez would often accompany Gonzales on his trips to and from New York. *Id.* Although the local distributor changed over the years, Moss Samake was acting in this capacity by the end of the drug trafficking scheme in November 1998. *Id.*

On November 22, 1998, Rodriguez and his girlfriend picked up Gonzales at a Ramada Inn in Cincinnati and took Gonzales to their apartment. *Id.* Gonzales told Rodriguez that he was planning on delivering drugs to Samake and asked Rodriguez to keep two kilograms of cocaine in his apartment. *Id.* at 908. After Gonzales spent the day in Rodriguez's apartment, Rodriguez's girlfriend drove Gonzales back to his hotel. *Id.*

The next day, Gonzales returned to Rodriguez's apartment and gave a portion of the cocaine that he had brought the previous day to Samake. *Gonzales*, 783 N.E.2d at 908. Later that day, Gonzales discovered that the police had surrounded Rodriguez's apartment. *Id.* Gonzales then left the cocaine with Rodriguez and his girlfriend and exited the apartment. *Id.* Rodriguez and his girlfriend hid the cocaine in the apartment building and attempted to leave, but after leaving the building Rodriguez was arrested and consented to a search of the apartment. *Id.* After an initial unsuccessful search, police threatened to charge Rodriguez's girlfriend with money laundering based

on receipts that were found in the search. *Id.* Rodriguez then revealed the location of the drugs, and police found two scales, 400.6 grams of powder cocaine and 164.2 grams of crack cocaine. *Id.* Samake was also arrested after leaving Rodriguez's apartment. *Id.* at 909. Police found $5,000 in cash in Samake's car and 400.1 grams of crack cocaine in his residence. *Id.* Gonzales was subsequently arrested; however, no cocaine was discovered on his person. *Id.* at 908.

**B.     Procedural Facts**

On December 3, 1998, Gonzales was indicted in the Hamilton County, Ohio Court of Common Pleas on two counts of possessing at least 100 grams of crack cocaine in violation of Ohio Revised Code § 2925.11(A) and one count of possessing at least 1,000 grams of non-crack cocaine with a Major Drug Offender ("MDO") specification on each count. At trial Gonzales' accomplice, Rodriguez, was called to testify against him. However, Rodriguez invoked his Fifth Amendment right against self-incrimination, and instead of presenting his live testimony, the prosecution presented Rodriguez's recorded statement to police officers. *Gonzales*, 783 N.E.2d at 906. At the close of trial, Gonzales was acquitted of one of the crack-possession charges and found guilty of the remaining charges and their accompanying MDO specifications. *Id.* Gonzales was sentenced to twenty years imprisonment. *State v. Gonzalez*, 742 N.E.2d 710, 713-14 (Ohio Ct. App. 2000). The Ohio Court of Appeals reversed Gonzales' conviction and remanded for a new trial, holding that the admission of Rodriguez's recorded statements constituted prejudicial error. *Id.*

Gonzales was retried on the possession counts and accompanying MDO specifications. *Gonzales*, 783 N.E.2d at 906. At the end of his second trial, the judge declared a mistrial due to allegations that one of Gonzales' family members threatened a juror in an attempt to influence the

3

verdict. *Id.* Following Gonzales' second trial in 2001, the State filed an additional indictment against Gonzales charging him with two counts of trafficking in at least 100 grams of crack cocaine in violation of Ohio Revised Code § 2925.03(A) and one count of trafficking in at least 1,000 grams of non-crack cocaine in violation of Ohio Revised Code § 2925.03(A) with an MDO specification accompanying each count. *Id.* at 906-07. These new charges were consolidated with the remaining two possession counts with MDO specifications from the 1998 indictment. *Id.* The crack cocaine possession charge of which Gonzales had been acquitted was not included in the 2001 indictment. Gonzales filed a motion to dismiss the indictments based on double jeopardy. The trial judge, a different judge than had presided over Gonzales' earlier trials, dismissed this motion.

Gonzales was convicted of all five possession and trafficking counts as well as their accompanying specifications. *Gonzales*, 783 N.E.2d at 906. The trial court sentenced Gonzales to 10 years of imprisonment on the count of possessing at least 100 grams of crack cocaine and a consecutive 10-year sentence on the MDO specification accompanying this charge. *Id.* Gonzales was also sentenced to 10 years of imprisonment for possessing at least 1,000 grams of non-crack cocaine to be served consecutively to the other possession count along with 10 years of imprisonment for the MDO specification accompanying the charge to be served concurrently with all counts. *Id.* For the three drug trafficking counts and their accompanying MDOs, Gonzales was sentenced to 10 years each to be served concurrently with the possession counts. *Id.* In total, Gonzales was sentenced to 30 years imprisonment.

On appeal, the Ohio Court of Appeals affirmed Gonzales' conviction, and the Ohio Supreme Court declined to exercise its jurisdiction to review the case. Gonzales subsequently filed a motion

for new trial and a petition for post-conviction relief based upon newly discovered information about the sentence reduction Rodriguez received for testifying against Gonzales. The trial court denied both the motion and the petition for post-conviction relief. Gonzales appealed this denial, and the Ohio Court of Appeals affirmed the trial court's decision. Gonzales further appealed, but the Ohio Supreme Court declined to exercise its discretionary jurisdiction.

Gonzales subsequently filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Ohio in which he raised eight grounds for relief. The case was referred to a magistrate judge who issued a report that recommended denying Gonzales' petition. Gonzales filed objections to the report and recommendations, and the magistrate judge responded to the objections in a supplemental report and recommendations, treating the objections as a motion for reconsideration. Despite Gonzales' objections to both the magistrate's initial and supplemental reports and recommendations, the district court adopted both reports and recommendations as written, dismissing with prejudice Gonzales' habeas petition on September 26, 2006. Gonzales requested a certificate of appealability from the district court and filed a notice of appeal to the this Court on October 20, 2006. The district court issued a certificate of appealability on the six issues raised in Gonzales' request. This Court construed Gonzales' notice of appeal as a request for a partial certificate of appealability on the remaining issues contained in his petition for writ of habeas corpus and declined to issue a certificate of appealability on the remaining issues.

## DISCUSSION

### Standard of Review

This Court's review of the legal conclusions underlying a district court's denial of habeas corpus relief is conducted *de novo*. *Lorraine v. Coyle*, 291 F.3d 416, 422 (6th Cir. 2002). Because the district court conducted no evidentiary hearing, we review the district court's factual findings *de novo*. *Northrop v. Trippett*, 265 F.3d 372, 377 (6th Cir. 2001).

Gonzales petitions for habeas corpus pursuant to 28 U.S.C. § 2254, which allows a person in state custody "in violation of the Constitution or laws or treaties of the United States" to be granted relief. 28 U.S.C. § 2254(a). Section 2254 allows this Court to grant habeas corpus relief only when

the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has made a distinction between the "contrary to" and "unreasonable application of" provisions of § 2254(d)(1):

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The factual determinations of the state court will be presumed to be correct unless the petitioner can show by "clear and convincing evidence" that the factual determination was erroneous. 28 U.S.C. § 2254(e)(1).

6

## I.  DOUBLE JEOPARDY CLAIMS

### A.  Preservation of the Issue

Gonzales argues that the Double Jeopardy Clause barred his conviction for three reasons; Gonzales claims that his retrial followed a mistrial that was not manifestly necessary, that he was given multiple punishments for the same offense, and that he was prosecuted for a crime of which he had been acquitted.  Before reaching the merits of Gonzales' claims, this Court must determine whether they were procedurally defaulted.

In disposing of a habeas petition from a state prisoner, this Court may not examine claims that were denied by the state courts based upon the prisoner's failure to abide by a state procedural rule.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  In order to determine whether a claim has been procedurally defaulted, this Court applies the four-part test set forth in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  This Court must first determine whether "there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* at 138.  This Court must then "decide whether the state courts actually enforced the state procedural sanction." *Id.*  Next, this Court must determine "whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Id.*  Finally, if we find that review of the petitioner's claim in state court was prevented by the petitioner's failure to comply with an adequate and independent state procedural rule, this Court must determine whether the petitioner has shown "that there was 'cause' for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error." *Id.*

There is no question that Gonzales complied with all procedural requirements to bring his claims that he was prosecuted for a crime of which he had been acquitted and that he was sentenced twice for the same crime. The same cannot be said for Gonzales' claim that the double jeopardy clause was violated because he was retried following the declaration of a mistrial. The district court found that this claim had been procedurally defaulted due to Gonzales' failure to provide a complete record to the Ohio Court of Appeals and Gonzales' failure to make a contemporaneous objection to the mistrial. For the reasons that follow, we agree that this claim was procedurally defaulted because of Gonzales' failure to provide the Ohio Court of Appeals with an adequate record.

On appeal to the Ohio Court of Appeals, Gonzales claimed that the mistrial of his second trial was not based upon manifest necessity and that as a result his third trial violated the Double Jeopardy Clause of the United States Constitution. *State v. Gonzales*, 783 N.E.2d 903, 909 (Ohio Ct. App. 2002). However, Gonzales failed to insure that the transcript of the trial proceedings that ended in a mistrial and a letter to a jury member that precipitated the mistrial were included in the record on appeal. *Id.* Under Ohio law, the appellant has the burden to provide "the appellate court with the record and exhibits that demonstrate the assigned errors." *Id.* at 910 (quoting *State v. Israel*, No. C-961006, 1997 WL 598396, at *6 (Ohio Ct. App. Sept. 26, 1997)). *See* Ohio App. R. 9(B). Because of Gonzales' failure to comply with this rule, the Ohio Court of Appeals rejected Gonzales' arguments regarding his retrial following the mistrial. *State v. Gonzales*, 783 N.E.2d 903, 910 (Ohio Ct. App. 2002).

The application of the *Maupin* analysis to the Ohio courts' rejection of Gonzales' claim due to his failure to present an adequate record on appeal reveals that this claim was procedurally

8

defaulted. Ohio has a procedural rule that requires appellants to include materials relevant to their assigned errors in the record on appeal. Ohio App. R. 9(B). In Gonzales' case, the Ohio Court of Appeals enforced the procedural rule by rejecting Gonzales' claim due to his failure to follow this rule. Thus, the first and second *Maupin* factors are met. As for the third factor, a state procedural bar must be "firmly established and regularly followed" to be considered "adequate and independent." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)). Ohio has regularly rejected claims due to appellants' failure to present an adequate record. *Volodkevich v. Volodkevich*, 549 N.E.2d 1237, 1237 (Ohio 1989); *State v. Davidson*, No. 2005-P-0038, 2006 WL 763082, at *4 (Ohio Ct. App. March 24, 2006); *State v. Estrada*, 710 N.E.2d 1168, 1170 (Ohio Ct. App. 1998). Finally, Gonzales has made no argument that cause and prejudice existed for his failure to include relevant parts of the record on appeal. Thus, Gonzales has procedurally defaulted his claim that the Double Jeopardy Clause was violated because he was retried after a mistrial that was not manifestly necessary, and this Court may not reach the merits of this issue.

The district court also found that this claim had been procedurally defaulted as the result of Ohio's contemporaneous objection rule. Under Ohio law, if an appellant could have made an objection to a ruling at trial but failed to do so, the appellant has waived appellate review of the challenge. *State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001). Issues that have been waived in this manner are only subject to plain error review. *Id.* at 789; Ohio Crim. Proc. R. 52. The district court found that Gonzales had procedurally defaulted his double jeopardy argument because he did not object to the declaration of a mistrial at the end of his second trial. This conclusion was erroneous.

Ohio courts have held that defendants waive double jeopardy challenges to a retrial following a mistrial by failing to object before retrial, not at the time the mistrial was declared. *State v. Gaines*, No. 82301, 2003 WL 22966190, at *9 (Ohio Ct. App. Dec. 18, 2003) ("Double jeopardy rights are personal rights that can be waived when the accused does not raise the issue of double jeopardy prior to a retrial."). In this case, Gonzales made a timely objection to his retrial by filing a motion to dismiss the indictment based on double jeopardy grounds before his third trial. It would be nonsensical to require a defendant to object on double jeopardy grounds at the time a mistrial is declared before the State has determined that it will seek a retrial.

The district court's conclusion that the contemporaneous objection rule acted as a procedural bar to Gonzales' double jeopardy claims was based on language from the Ohio Court of Appeals' opinion. The Ohio Court of Appeals stated that even if it were to analyze Gonzales' argument regarding the mistrial,

> in light of Gonzales's failure to object on the record, we would not have concluded that a retrial would have been barred. In determining whether a trial court has abused its discretion in *sua sponte* declaring a mistrial, an accused's right to have his case decided by a particular jury is weighed against society's interest in an efficient dispatch of justice, and, depending on the circumstances, the accused's right can be subordinated to the public's interest in a fair trial. *See State v. Glover* (1988), 35 Ohio St. 3d 18, 19, 517 N.E.2d 900. Thus, "[w]here the facts of the case do not reflect unfairness to the accused, the public interest in insuring that justice is served may take precedence." *See id.* Here, Gonzales did not object to the mistrial.
>
> If the facts were such that the mistrial had not been prompted by the state's misconduct, the mistrial was not inherently unfair to Gonzales, and no objection was made, there would certainly have been no abuse of discretion. *See id.* at 20, 517 N.E.2d 900.

*Gonzales*, 783 N.E.2d at 910 (formatting altered). Although the Ohio Court of Appeals noted Gonzales' failure to object, it applied the standard of review applied to all cases in which the court

10

*sua sponte* declares a mistrial. *State v. Glover*, 517 N.E.2d 900, 903 (Ohio 1988) ("We hold, therefore, that where the trial judge *sua sponte* declares a mistrial, double jeopardy does not bar retrial unless the judge's action was instigated by prosecutorial misconduct designed to provoke a mistrial, or the declaration of a mistrial constituted an abuse of discretion."). From the structure of the opinion, it appears that Gonzales' failure to object was just one of the circumstances taken into account by the court in rejecting Gonzales' claim. *See Glover*, 517 N.E.2d at 903 (noting defendant's failure to object to the declaration of a mistrial in examining whether this action was inherently unfair to the defendant). Therefore, Gonzales' failure to provide an adequate record on appeal is the sole basis for the procedural default of Gonzales' claim that his retrial was barred by double jeopardy because of a prior mistrial that was not manifestly necessary.

Gonzales has not procedurally defaulted his claims that he was punished twice for the same crime and that he was prosecuted for a crime of which he had been acquitted in an earlier proceeding. Therefore, we address the merits of these claims below.

**B.      Analysis**

Gonzales claims that his conviction for the Major Drug Offender ("MDO") sentencing specifications violates the Double Jeopardy Clause because the MDO specifications allow cumulative punishment for the same crime as the possession and trafficking convictions. The Double Jeopardy Clause protects a defendant "against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). The Supreme Court has interpreted the multiple punishments aspect of the Double Jeopardy

11

Clause as protecting defendants from being punished more than once for a single act when the legislature does not intend for the punishments to be cumulative. *Albernaz v. United States*, 450 U.S. 333, 344 (1981)    However, when the legislature authorizes a defendant to be punished cumulatively for the same act, the Double Jeopardy Clause is not violated. *Id.* The Supreme Court developed the "same elements" test in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether cumulative punishment has been authorized, holding that:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304. The *Blockburger* same elements test is a general rule of statutory construction, and as a result, when "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

At his third trial, Gonzales was convicted of three counts of trafficking in cocaine and two counts of possessing cocaine. He was also convicted of the MDO specifications that accompanied each of these counts. His conviction on the MDO specifications added ten years to his sentence. Gonzales notes that once the facts were established to convict him of trafficking in and possession of cocaine there was no need to prove additional facts in order to convict him of the MDO

specifications.[1]  As a result, he claims that his convictions fail the *Blockburger* same elements test and are thus violative of the Double Jeopardy clause.  The Ohio Court of Appeals determined that the legislature clearly intended to impose cumulative punishment when a person sells or possesses a large quantity of drugs.  *Gonzales*, 783 N.E.2d at 915.  This Court must accept the Ohio court's interpretation of the intent of the Ohio legislature.  *See Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment for the two pairs of crimes involved here.").  Because the Ohio legislature has authorized cumulative punishment in authorizing MDO convictions, Gonzales' conviction did not violate the Double Jeopardy clause.

Gonzales also claims that since he was acquitted in his first trial of one count of possessing cocaine, he cannot subsequently be prosecuted for trafficking the cocaine that he had been acquitted of possessing.  Courts also apply the *Blockburger* same elements test to evaluate whether the successive prosecution aspect of the Double Jeopardy clause has been violated.  *United States v. Dixon*, 509 U.S. 688, 696 (1993).  Applying the *Blockburger* test, the Ohio Court of Appeals held that trafficking cocaine is not the same offense as possessing cocaine for double jeopardy purposes.  *Gonzales*, 783 N.E.2d at 913-14.  The statutory provision defining the crime of possessing a

---

[1]    R.C. 2925.03(C)(4)(g) provides that whoever violates R.C. 2925.03(A), drug trafficking, where the amount of powder cocaine exceeds 1,000 grams or the amount of crack cocaine exceeds 100 grams, is a major drug offender by operation of law, and the court must impose the maximum ten-year prison sentence for the felony violation. R.C. 2925.11(C)(3)(f) provides that a person possessing such amounts of crack and powder cocaine is a major drug offender and provides the same mandatory ten-year sentence.
*Gonzales*, 783 N.E.2d at 915.

controlled substance, section 2925.11(A) of the Ohio Revised Code, "prohibits a person from knowingly obtaining, possessing, or using a controlled substance," whereas the crime of trafficking in a controlled substance involves "knowingly selling or offering to sell a controlled substance." *Id.* at 913 (citing Ohio Rev. Code 2925.03(A)). The Ohio Court of Appeals found that each offense requires proof of an additional fact that the other does not. 783 N.E.2d at 913-14. The court held that it is possible to possess a controlled substance without selling or offering to sell it, and it is also possible to sell or offer to sell a controlled substance without possessing it. *Id.* at 914. For the latter conclusion, the court cited *State v. Scott*, 432 N.E.2d 798 (Ohio 1982), in which the Ohio Supreme Court held that a defendant who had offered to sell ecstasy pills but had actually sold pills that did not contain a controlled substance could be convicted for offering to sell a controlled substance under Ohio Revised Code 2925.03(A). *Id.*

Gonzales admits that pursuant to the holding in *Scott* it is sometimes possible to be convicted of trafficking in cocaine without the possibility of being convicted for possession of cocaine. However, Gonzales contends that as applied to the facts of his case, the statutory provisions do not satisfy the *Blockburger* same elements test. Even if this is the case, Gonzales' argument fails because the United States Supreme Court itself has applied the *Blockburger* test in the abstract to the elements as described in a statute instead of to the facts of a particular case. *Albernaz*, 450 U.S. at 339. Thus, the Ohio Court of Appeals' determination that double jeopardy did not bar Gonzales' retrial is not an unreasonable application of Supreme Court precedent.

## II.    CONFRONTATION CLAUSE CLAIM

### A.    Preservation of the Issue

Although Gonzales claims that the district court denied Gonzales' confrontation clause claim because he failed to preserve the claim for federal habeas review, Gonzales' preservation of the Confrontation Clause issue has not been questioned. The claim was addressed on the merits in both state court and federal district court. Thus, whether Gonzales' conviction violated the Confrontation Clause is properly before this Court.

## B.    Analysis

Gonzales argues that the Confrontation Clause was violated because he was unable to meaningfully cross-examine Rodriguez because of the trial court's limitations on his questioning.[2] The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to cross-examination is the primary right secured by this clause and "is critical for ensuring the integrity of the fact finding process." *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987). The Supreme Court has held that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)). *Accord Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) ("[T]he right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable."). However, trial courts retain broad discretion regarding the conduct of cross examination and may "impose reasonable limits on such cross-examination based on concerns about, among other things,

---

[2]Gonzales also argues that the State's withholding of evidence hindered him from cross-examining Rodriguez. This argument is co-extensive with Gonzales' *Brady* claim and is discussed in Section VI below.

harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Court has cautioned that "[g]enerally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Thus, a trial court's limitation on cross-examination regarding a witness' bias violates the Confrontation Clause when "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680.

At trial, the court limited Gonzales' questioning regarding the illegality of Rodriguez's sentence. Gonzales tried to establish during cross-examination that Rodriguez had received an illegally short sentence in exchange for his testimony. Gonzales' questioning was based upon Rodriguez's receipt of a five-year sentence for possessing at least 100 grams of crack cocaine pursuant to a plea bargain when the mandatory minimum sentence for this offense was ten years imprisonment. The trial court allowed Gonzales to inquire into whether Rodriguez entered into a plea bargain, the length of his current sentence, and whether he could receive a sentence reduction for his testimony. However, the trial court did not allow Gonzales to inquire into the specific length of imprisonment Rodriguez faced in the absence of a plea bargain nor into the purported illegality of his shortened sentence. The Ohio Court of Appeals held that the trial court's limitation on questions regarding Rodriguez's understanding of the mandatory minimum sentence although

"technically erroneous" was "not an abuse of discretion" and did not violate Gonzales' Sixth Amendment rights. *Gonzales*, 783 N.E.2d at 916.

Gonzales claims that the trial court's decision violated his Confrontation Clause rights by inhibiting his ability to cast doubt upon Rodriguez's motives and incentives for testifying. For this proposition, Gonzales cites extensively to *Banks v. Dretke*, 540 U.S. 668 (2004). In *Banks* the Supreme Court determined that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose a key witness' status as a paid police informant. The Court found a witness' informant status to be material due to the probability that the jury would have discounted the witness' testimony if the jury knew of the witness' added incentive to cooperate at trial. *Banks v. Dretke*, 540 U.S. at 701. The Court also noted that the jury was further put at a disadvantage by the inability of the defendant to effectively cross-examine the witness regarding his credibility. *Id.* at 701-02.

*Banks* did not explicitly involve the Confrontation Clause and made no pronouncements on the constitutionally-mandated scope of cross-examination. However, to the extent that *Banks* highlighted the importance of the opportunity to cross-examine regarding a witness' bias, the trial court did not act contrary to this principle and deprive Gonzales of the opportunity to meaningfully cross-examine Rodriguez. Gonzales' counsel engaged in extensive cross-examination regarding Rodriguez's truthfulness, the existence of a plea bargain, the bargained-for sentence, and the possibility of a sentence reduction as a result of his testimony. The trial court only restricted counsel from questioning Rodriguez regarding the potential length of his sentence absent a plea bargain and the legality his sentence. Gonzales has not shown that information regarding the allegedly illegal

duration of Rodriguez's sentence would have added to the jury's understanding of Rodriguez's potential bias. *See United States v. Nelson*, 39 F.3d 705, 709 (7th Cir. 1994) (Confrontation Clause was not violated where the defendant was not permitted to question a government witness about the length of the prison sentence he would have faced absent a plea bargain); *Brown v. Powell*, 975 F.2d 1, 5-6 (1st Cir. 1992) (same).

## III.   JURY INSTRUCTIONS CLAIM

### A.   Preservation of the Issue

The district court determined that Gonzales had failed to preserve his federal constitutional challenge to the jury instructions given by the trial court because his arguments in state court were based solely upon state law. A habeas petitioner must exhaust "the remedies available in the courts of the State." 28 U.S.C. 2254(b)(1)(A). To fulfill this exhaustion requirement, a petitioner must fairly present the factual and legal basis for his claims in order to give state courts a full and fair opportunity to adjudicate such claims. *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The Supreme Court has held that this requirement of fairly presenting a federal claim to state courts does not require extensive elaboration:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Supreme Court recently examined the specificity necessary to fairly present a federal claim to state courts when it reversed this Court's decision in *Dye v. Hofbauer*, 111 F. App'x 363 (6th Cir. 2004). In *Dye v. Hofbauer*, 546 U.S. 1 (2005), the Court held that a petitioner fairly presented his federal claims when he argued in a state court brief

18

that he was denied due process of law and a fair trial, linked his argument to constitutional amendments, and cited federal cases. *Id.* at 3-4.

In order to determine whether a claim has been fairly presented to state courts, this Court examines whether the petitioner presented his claim in one of four ways in state court:

> (1) rel[ying] upon federal cases employing constitutional analysis; (2) rel[ying] upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000)). Applying this test to Gonzales' case leads to the conclusion that Gonzales fairly presented his federal claims to the state courts.

In his brief to the Ohio Court of Appeals, Gonzales stated: "The Sixth Amendment right to jury trial includes the right to a jury that is fairly and properly instructed. *Cheek v. United States* (1991), 498 U.S. 192, 111 S.Ct. 604." (J.A. 930.) He then proceeded to argue that his right to a jury trial was denied. On the face of the brief, it is clear that Gonzales both relied "upon federal cases employing constitutional analysis" and phrased "the claim in terms of constitutional law." *Whiting*, 395 F.3d at 613. The district court disregarded this portion of Gonzales' brief, noting that the analysis of jury instructions conducted in *Cheek* was not relevant to the jury instructions at issue in this case.

While the district court is correct that *Cheek* does not lend much support to Gonzales' claim, this observation is largely beside the point. The *Cheek* court held that it was error for a trial court to instruct the jury to disregard evidence that could have been interpreted to negate the government's

19

proof of an element of the crime charged and that such error raised serious Sixth Amendment concerns. *Cheek v. United States*, 498 U.S. 192, 203 (1991). Despite the weakness of his claim under this precedent, by citing *Cheek*, Gonzales made clear "the federal law basis for his claim," *Baldwin*, 541 at 32, in this case the jury trial right embodied in the Sixth Amendment. *See Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (holding that petitioner who discussed federal constitutional violations but "cited the wrong cases in support of his constitutional claim" fairly presented his federal claim). Because Gonzales fairly presented his jury instructions claim, this claim cannot be dismissed on exhaustion grounds.

The State attempts to justify the district court's determination that Gonzales' Sixth Amendment jury instruction argument was not fairly presented to the state courts by citing *Slaughter v. Parker*, 450 F.3d 224 (6th Cir. 2006). In *Slaughter* this Court determined that a claim was not fairly presented where the petitioner made a general reference to the Fourteenth and Sixth Amendments. *Slaughter*, 450 F.3d at 236. This Court found that one general reference to the Constitution was insufficient to fairly present a federal claim to state courts. *Id.* Although *Slaughter* is arguably inconsistent with the Supreme Court precedent discussed above, *see id.* at 251-52 (Cole, J., dissenting), Gonzales' has fairly presented his claims to the state courts even under the strict interpretation of this requirement espoused by *Slaughter*. Gonzales' presentation to the state appellate courts was more detailed than Slaughter's inasmuch as Gonzales cited not only the constitutional amendment relevant to his claim, but also a federal case specifically addressing denial of the Sixth Amendment right to jury trial. *See Slaughter*, 450 F.3d at 236 (distinguishing the Supreme Court's decision in *Dye* from Slaughter's case because Dye had "explicitly referenced four

federal cases, all of which addressed due process violations"); *see also Scuba v. Brigano*, 527 F.3d 479, 486 (6th Cir. 2007) (remarking that a federal issue is fairly presented where petitioner cites the applicable federal constitutional amendment and a case applying the constitutional principle at issue). As a result, Gonzales fairly presented his Sixth Amendment jury instructions argument to the state courts and has thus preserved this issue for review before this Court.

### B.      Analysis

Gonzales claims that the trial court's erroneous jury instructions deprived him of his Sixth Amendment right to trial by jury. Generally, the constitutionality of jury instructions is governed by the Due Process clause of the Fifth and Fourteenth Amendments. *See e.g., Estelle v. McGuire*, 502 U.S. 62 (1991) (due process is violated where a defective instruction "infected the entire trial"). However, the Sixth Amendment is implicated if defective instructions remove from the jury's consideration a necessary element of the prosecutor's case. *Cheek*, 498 U.S. at 203.

Gonzales has presented no proof that such a situation existed at his trial. Gonzales claims that the judge should not have given a complicity instruction and should have given Gonzales' proposed instruction regarding the credibility of a co-defendant's testimony. Gonzales does not claim that the judge's instructions usurped the jury's factfinding role in any way. Gonzales instead argues that the jury instructions violated Ohio law. These arguments are irrelevant to this Court's analysis inasmuch as "the fact that the instruction[s] w[ere] allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Because there is no indication that the jury instructions given in this case violate federal constitutional law, Gonzales' jury instructions claim lacks merit.

21

## IV. *APPRENDI* CLAIM[3]

Gonzales' claim that Ohio's MDO specification statute is unconstitutional is based upon the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The *Apprendi* court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The Sixth Amendment is violated "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow." *Rita v. United States*, 127 S. Ct. 2456, 2466 (2007) (quoting *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004)). Gonzales claims that the MDO specification statute violates the Sixth Amendment by requiring the trial court to make a finding that a defendant is a major drug offender. This argument is meritless because the trial court is not required to make an additional factual finding in order to apply the MDO specification.

Included in Ohio's definition of a major drug offender is "an offender who is convicted of or pleads guilty to the possession of, sale of, or offer to sell any drug, compound, mixture, preparation, or substance that consists of or contains . . . at least one hundred grams of crack cocaine; at least one thousand grams of cocaine that is not crack cocaine. . ." Ohio Rev. Code § 2929.01(X). Gonzales objects to the statutory requirement that "[t]he court shall determine the issue of whether an offender is a major drug offender." Ohio Rev. Code § 2941.1410(B). However, the designation of Gonzales as a major drug offender required no additional findings of fact to be made by the trial court. Gonzales was charged and convicted by a jury of possessing and trafficking in at least one hundred grams of crack cocaine and at least one thousand grams of non-crack cocaine. As a result,

---

[3]It is undisputed that Gonzales has preserved this issue and all that follow.

he met the statutory definition of a major drug offender, and the trial court designated him as such and imposed the mandatory ten-year sentence resulting from a MDO specification. Ohio Rev. Code § 2925.14(D)(3)(a). Thus, the Ohio Court of Appeals did not unreasonably apply federal law by determining that the trial court's designation of Gonzales as a major drug offender did not violate the Sixth Amendment. *See Rita*, 127 S. Ct. at 2466; *In re Ohio Criminal Sentencing Statutes Cases*, 845 N.E.2d 470, 494 (Ohio 2006) (holding that imposing punishment for MDO status complied with Sixth Amendment as long as the judge did not impose additional punishment above the mandatory ten-year sentence).

## V. VINDICTIVE SENTENCING CLAIM

Gonzales claims that the thirty-year sentence imposed as the result of his third trial violated his due process rights because it exceeded the twenty-year sentence imposed following his first trial. The Due Process clause of the Fourteenth Amendment prohibits a court from imposing a harsher sentence on a defendant to punish him for exercising his right to appeal. *North Carolina v. Pearce*, 395 U.S. 711 (1969). In order to protect this right, appellate courts must apply a presumption that the trial court acted vindictively when a harsher sentence is imposed following appeal. *Id.* at 726. When this presumption applies, reversal is required unless the reasons for the longer sentence are apparent from the record. *Id.* The Supreme Court has recognized some exceptions to this rule for situations in which such a presumption is not warranted. One such exception is made where a different judge imposes sentence after appeal. *Texas v. McCullough*, 475 U.S. 134, 140 (1986). This exception arises from the recognition that a sentencing judge uninvolved in the imposition of the

23

earlier sentence would lack a "personal stake" in the outcome of later proceedings and would thus have little motive to act vindictively. *Id.* at 140 n.3.

The judge that sentenced Gonzales after his first trial was not the same as the one who sentenced him at his third trial. As a result, no presumption of vindictiveness applies, and Gonzales must demonstrate actual vindictiveness on the part of the sentencing judge. Since Gonzales has offered no such proof, the state court's holding that Gonzales' sentence did not violate *Pearce* was not an unreasonable application of federal law.

## VI.   *BRADY* CLAIM

Gonzales claims that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the existence of a sentence reduction agreement between Rodriguez and the State. After his third trial, Gonzales learned that Rodriguez had received a reduction in his sentence following his testimony against Gonzales. Gonzales also procured from the State an interview tape-recorded before Gonzales' third trial in which Rodriguez stated that his lawyer had made a deal with prosecutors to reduce his sentence in exchange for his testimony. As a result of this evidence, Gonzales filed a petition for post-conviction relief, a motion for leave to file a motion for new trial, and a motion for new trial, all of which were denied by the state trial court. This denial was affirmed by the Ohio Court of Appeals, which held that the newly-discovered evidence was not material to Gonzales' case.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to reveal all evidence that is favorable to the defendant's case and "material to either guilt or punishment." *Brady v. Maryland*, 373 U.S. at 87. Under this standard, the prosecution is obligated to turn over not just

exculpatory evidence but also evidence that would impeach the credibility of prosecution witnesses. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Evidence is material for *Brady* purposes if "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Banks v. Dretke*, 540 U.S. 668, 69 (2004) (quoting *Kyles*, 514 U.S. at 435).

The materiality of the evidence that Gonzales discovered after trial must be examined in light of the evidence adduced at trial. During direct examination, Rodriguez stated that no promises had been made to him in exchange for his testimony. On cross-examination Rodriguez continued to claim that no promises had been made but admitted that he had talked to police about getting a reduction in his sentence in exchange for his testimony against Gonzales. Although Rodriguez's initial statement that no promises were made to him in exchange for his testimony was misleading at best, his testimony during cross-examination gave the jury an understanding of the benefits he could derive from testifying for the prosecution. The newly discovered evidence of the reduction of Rodriguez's sentence and his statement regarding a deal with prosecutors remains consistent with his testimony that he hoped to receive a sentence reduction as a result of his testimony and that police had said they would help him seek a sentence reduction. As a result, Gonzales has not shown that there exists a reasonable probability that knowledge of Rodriguez's sentencing reduction would have resulted in a different outcome. Therefore, the state court did not unreasonably apply federal law in holding that the prosecution did not violate *Brady* by failing to disclose evidence of Rodriguez's probable sentencing reduction.

**VII.   CHALLENGE TO THE MAGISTRATE JUDGE'S AUTHORITY**

In addition to his claims regarding state court proceedings, Gonzales challenges the conduct of the proceedings in district court. Gonzales argues that the magistrate judge exceeded his authority by responding to Gonzales' objections to the magistrate judge's report and recommendations. Section 636 of Title 28 of the United States Code allows a judge to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for disposition by a judge of the court, . . . of applications for posttrial [sic] relief made by individuals convicted of criminal offenses . . ." 28 U.S.C. § 636(b)(1)(B). This statute further provides that parties may file objections to the magistrate judge's report or recommendations and that "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). *See* Rules Governing Section 2254 Cases in United States District Courts 8(b) ("The judge must determine de novo any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."). District courts may also assign magistrate judges "additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(3).

Gonzales filed objections to the magistrate judge's initial report and recommendations, and the magistrate judge responded to these objections by issuing a supplemental report and recommendations. The district court subsequently adopted both the initial and supplemental report and recommendations, stating that "[t]he Court has reviewed the comprehensive findings of the

Magistrate Judge and considered de novo all of the filings in this matter. Upon consideration of the foregoing, the Court does determine that such Recommendations should be adopted." (J.A. 14.) Gonzales claims that the district court erred in adopting the magistrate judge's supplemental recommendations since the district court and not the magistrate judge had the duty to respond to objections. Gonzales' claim lacks merit because the district court fulfilled its statutory duty by conducting its own independent review of the filings and considering Gonzales' objections *de novo.*

## CONCLUSION

For the reasons stated above, this Court **AFFIRMS** the district court's denial of Gonzales' petition for writ of habeas corpus.