RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0086p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

ROBBY LEE MCFALLS,

        *Defendant-Appellant.*

No. 10-6238

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00079-001—William J. Haynes, Jr., District Judge.

Argued: February 28, 2012

Decided and Filed: March 30, 2012

Before: MERRITT and ROGERS, Circuit Judges; POLSTER, District Judge.[*]

───────────────

**COUNSEL**

**ARGUED:** Andrew C. Brandon, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Braden H. Boucek, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Andrew C. Brandon, C. Douglas Thoresen, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Matthew J. Everitt, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

───────────────

**OPINION**

───────────────

DAN AARON POLSTER, District Judge. This is the second time this case is before this Court. Defendant Robert McFalls previously appealed the district court's

───────────────

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

determination that he was a career offender under United States Sentencing Guidelines § 4B1.1.  He was successful in that appeal; upon remand, however, he was given a sentence that likely increased his period of incarceration by as much as six years.  He now appeals the new sentence.  We affirm.

## I.    FACTS AND PROCEDURAL HISTORY

Robby McFalls committed a string of armed robberies in 2002 and 2003 in South Carolina and Tennessee.  He was convicted of the South Carolina robberies in state court and sentenced to 25 years.  The United States then brought charges against him for the Tennessee robbery, alleging one count of bank robbery in violation of 18 U.S.C. § 2113(d) ("Count 1") and one count of carrying a firearm during the robbery in violation of 18 U.S.C. § 924(c)(1) ("Count 2").  McFalls pled guilty to both counts.

On June 27, 2008, McFalls was sentenced by United States District Court Judge Robert L. Echols.  Judge Echols determined that McFalls was a career offender, under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1, on the basis of two prior convictions for crimes of violence.  That determination affected the sentencing guideline range for Count 1.  Without the career offender status, McFalls's guideline range would have been 77 to 96 months; *with* the career offender status, the guideline range was 188 to 235 months.  Judge Echols sentenced McFalls to the low end of the latter range: 188 months.

As to Count 2, Judge Echols sentenced McFalls to 84 months.  He further ordered the 188-month sentence for Count 1 to run concurrently with McFalls's 25-year South Carolina sentence and ordered the 84-month sentence for Count 2 to run consecutively to Count 1 and the South Carolina sentence.[1]  The Government did not object to the sentence.

McFalls timely appealed his classification as a career offender, challenging Judge Echols's determination that he had two prior convictions for crimes of violence.  We

---

[1]By law the sentence for the firearm violation in Count 2 must run consecutively to any sentence imposed for Count 1.  18 U.S.C. § 924(c)(1)(D)(ii).

found merit in McFalls's argument and remanded for further proceedings. *United States v. McFalls*, 592 F.3d 707 (2010). The last sentence of our opinion reads:

> For these reasons, McFalls' case is remanded to the district court for resentencing, following further review of any sources permitted under *Shephard v. United States*, 544 U.S. 13 (2005), to determine whether McFalls' prior convictions were for crimes of violence under the Guidelines.

*McFalls*, 592 F.3d at 717.

The Government did not cross-appeal. Indeed, the issue of whether McFalls was a career offender under U.S.S.G. § 4B1.1 was the only issue before the Sixth Circuit.

### A.     Resentencing hearing

A few months after this Court issued its opinion, but before resentencing, Judge Echols recused himself, and the case was randomly reassigned to District Judge William J. Haynes, Jr. The Government decided to abandon its prior contention that McFalls was a career offender. Accordingly, because McFalls was no longer considered a career offender, the appropriate guideline range for Count 1 dropped to 77-96 months. The career offender status had no effect on the sentencing range for Count 2, and both sides agreed, as before, that McFalls would be subject to an 84-month mandatory minimum, to run consecutively to the sentence for Count 1.

The resentencing hearing was held on September 17, 2010. Both sides agreed on the appropriate range for Count 1, but they disagreed about where in the range the sentence should fall. McFalls sought a sentence at the low end, to be congruent with the original sentence, which was at the low end of the career-offender range. The Government sought a sentence at the high end. Judge Haynes sided with McFalls and sentenced him to 77 months.

One aspect of the new sentence, however, upset McFalls and is the basis of this appeal. At the resentencing hearing, the Government requested that the sentence for Count 1 run *consecutively* to McFalls's 25-year state sentence. McFalls objected because under the original sentence the 188-month term for Count 1 was ordered to run

*concurrently* to his undischarged state sentence. McFalls took the position that our remand was a limited one, thereby constraining Judge Haynes on resentencing. The Government argued the remand was general, giving Judge Haynes the authority to revisit all aspects of the sentence.

Judge Haynes agreed with McFalls that the Sixth Circuit's remand was limited. Nonetheless, Judge Haynes opted not to abide by the original judge's decision to run the sentence for Count 1 *concurrently* to the state sentence. Instead, Judge Haynes ordered the 77-month sentence for Count 1 to run *consecutively* to the state-court sentence. In justifying his decision, Judge Haynes stated on the record:

> The Court imposes this sentence considering all of the factors under [U.S.S.G. §] 3553(a) that were in the presentence report, that were in the parties' submissions, the Sixth Circuit opinion, the supplemental report. There was an issue about some evidentiary issues on post conviction evidence. The Court has divorced itself from that in imposing this sentence.

(R. 99 at 47).

When defense counsel asked Judge Haynes why he imposed the sentence for Count 1 to run consecutively to the state sentence, as opposed to concurrently, as the original judge had done, Judge Haynes responded:

> Well, from my review of the original case. . .it is the extent of [McFalls's] criminal history . . . it was the nature of the violent offense. This is not only a bank robbery, but an armed bank robbery, and brandishing of a weapon . . . in a very threatening manner.

(Id.).

Defense counsel took issue with the ruling, pointing out that Judge Haynes considered the same evidence and the same record—indeed the same criminal history—as the original sentencing judge. Why, then, the difference, McFalls's attorney wondered? Judge Haynes: "[T]hat's the original sentence I would have imposed. If I had been there at the original sentence." (Id. at 56).

The effect of Judge Haynes's decision to run Count 1 consecutively to the state sentence was significant. Under the original sentence, the South Carolina sentence of 25 years would have consumed almost the entire sentence for Count 1—since Count 1 was ordered to run concurrently to the state sentence—after which McFalls would have served 84 months for Count 2. Under the new sentence, by contrast, McFalls has to serve out his 25-year state sentence, plus another 77 months for Count 1, plus the 84 months for Count 2. The net effect, according to McFalls, is that he will spend more time in prison—perhaps six years more[2]—under the new sentence than he would have under the original sentence. And that's after winning his appeal.

## II.    ANALYSIS

### A.    Nature of the remand

McFalls argues that this Court issued a limited remand by explicitly outlining the sole issue to be addressed by the district court at resentencing—whether his prior convictions were for crimes of violence—and by creating a narrow framework within which the district court had to operate. Accordingly, the argument goes, Judge Haynes exceeded the bounds of that remand when he reversed the original judge's decision to run the sentence for Count 1 concurrently with the state sentence.

Under 28 U.S.C. § 2106, courts of appeals may issue either general or limited remands. *United States v. Hunter*, 646 F.3d 372, 374 (6th Cir. 2011). A general remand permits the district court to redo the entire sentencing process, including considering new evidence and issues. *United States v. Moore* ("*Moore II*"), 131 F.3d 595, 597 (6th Cir. 1997). A limited remand, by comparison, does not allow a *de novo* resentencing and instead constrains the district court's authority to the issue or issues adjudicated. *Id.* at 598.

The question of whether a remand is limited or general is a legal question that this Court reviews *de novo*. *United States v. Gibbs*, 626 F.3d 344, 350 (6th Cir. 2010).

----

[2]The exact amount of time McFalls will spend in state prison is not certain. At oral argument, the parties agreed that McFalls must serve at least 85% of his state term.

Unless otherwise specified, a remand order is presumed to be general. *United States v. Helton*, 349 F.3d 295, 299 (6th Cir. 2003); *Moore II*, 131 F.3d at 598. A remand is limited, however, when the Court's mandate is so narrow in scope as to preclude the district court from considering a particular issue. *United States v. Campbell*, 168 F.3d 263, 266 (6th Cir. 1999) (quoting *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994)).

A limited remand must explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. *Gibbs*, 626 F.3d at 350 (quoting *Campbell*, 168 F.3d at 265). It must convey clearly the intent to limit the scope of the district court's review. *Campbell*, 168 F.3d at 267. This intent is achieved by outlining the procedure the district court is to follow, articulating the chain of intended events with particularity, and leaving no doubt as to the scope of the remand. *Id.* at 268. The language used to limit the remand should be unmistakeable. *Gibbs*, 626 F.3d at 350–51 (quoting *Campbell*, 168 F.3d at 268).

McFalls makes much of the fact that this Court's prior opinion addressed a single sentencing issue: his classification as a career offender under U.S.S.G. § 4B1.1. He argues that this Court "identified a single, specific issue to be addressed on remand and created a narrow framework in which to address it." (Brief of Petitioner at 20-21). But the fact that an opinion addresses a single sentencing issue does not automatically lead to the conclusion that the remand is limited. *See, e.g., Gibbs*, 626 F.3d at 351 (finding a general remand in spite of the fact that the Court had identified a discrete sentencing issue that required remand).

McFalls further argues that "the opinion is entirely dedicated to determining whether the 'career offender' enhancement applies to McFalls' prior convictions, and it explicitly outlines the consequences of that decision, noting that the determination means the difference between a 188- to 235-month sentence on the one hand, and a 77- to 96-month on the other." (Brief of Petitioner at 21). It could be argued that this Court's prior opinion created a "framework" with respect to McFalls's status as career offender, because it directed the district court to review sources permitted under

*Shephard v. United States* and noted the different sentencing ranges. But that framework was not so narrow in scope as to preclude the district court from considering other issues. And, although this Court identified the applicable guidelines range without the career-offender enhancement, this Court did not specify—even though it could have—where within that range the district court should re-sentence McFalls. And it makes sense why the Court did not do that.

The presumption in favor of a general remand is necessarily strong in the context of a resentencing because the calculation of a sentence under the Guidelines "requires a balancing of many related variables," and "[t]hese variables do not always become fixed independently of one another." *Campbell*, 168 F.3d at 268; *see also* 18 U.S.C. § 3553(a) (outlining the factors relevant to sentencing). A change to one variable may have a cascading effect on other variables. *See Pepper v. United States*, 131 S. Ct. 1229, 1251 (2011) (observing that the original sentencing intent may be undermined by altering one portion of the sentencing calculus) (internal citation omitted); *Campbell*, 168 F.3d at 266 ("The policy underlying the presumption of de novo resentencing is to give the district judge discretion to consider and balance all of the competing elements of the sentencing calculus.").

Indeed, the fact that a change to one variable may affect the rest of the sentencing calculus is precisely why a limited remand must outline the procedure the district court is to follow and articulate the chain of intended events with particularity. *See Campbell*, 168 F.3d at 268 ("When this court issues a limited remand, it must make certain that reconsideration of the issues remanded will not alter the proper calculation of other sentencing variables outside the scope of the remand."). At the same time, it is not always possible for a court of appeals to foresee the potential chain of events that will follow remand. It is to avoid the difficulty of postulating an endless array of "ifs" and "thens" that the courts of appeals are presumed to let district courts re-sentence *de novo*. The district courts can spare the courts of appeals the arduous, sometimes insurmountable, task of conjuring up all the contingencies by imposing a sentence based on the calculus as it really is, not as it might be.

Furthermore, even if it could be said that our prior opinion created a framework to be applied on remand, our opinion did not convey clearly the intent to limit the scope of the district court's review.  It is instructive to consider the opinion in *United States v. Moore* ("*Moore I*"), 76 F.3d 111 (6th Cir. 1996), which is an example of a limited remand.  The Court's parting words were:

> We therefore VACATE Moore's section 924(c)(1) conviction and REMAND for further proceedings, in which both parties can have the opportunity to focus on the facts and law relevant to proving that Moore used or carried a firearm during and in relation to his drug trafficking offense. We adhere to our previous opinion in all other respects.

*Id.* at 114.  The last sentence was a specific limitation, clearly limiting the scope of review, and was key to the determination that the remand was limited.  *See Campbell*, 168 F.3d at 267; *Moore II*, 131 F.3d at 599.

There is no such limiting language here.  It would be a stretch to say that the remand limited the district court's inquiry to the issue of career offender in unmistakable terms, that the opinion conveys clearly the intent to limit the scope of the district court's review, or that it articulates "the chain of intended events with particularity," leaving no doubt as to the scope of the remand.  The presumption of general remand stands.

Since the remand was general, the issue is whether the resentencing judge had authority to order the revised sentence for Count 1 to run consecutively to an undischarged state sentence.  A general remand effectively wipes the slate clean. *Pepper*, 131 S. Ct. at 1251.  Indeed, a general remand gives the district court authority to redo the entire sentencing process.  *Moore II*, 131 F.3d at 597.  The only constraint is that the district court must remain consistent with the remand.  *Gibbs*, 626 F.3d 350 (quoting *Campbell*, 168 F.3d at 265).

"A district court has discretion to order a federal sentence to run either concurrently or consecutively to an discharged term of imprisonment." *Gibbs*, 626 F.3d at 349 (citing 18 U.S.C. § 3584(b)).  A court's decision to run a sentence either concurrently or consecutively is reviewed under a deferential abuse-of-discretion

standard. *See United States v. Barahona-Montenegro*, 565 F.3d 980, 983 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38 (2007)). McFalls does not invoke the abuse-of-discretion standard; indeed, there is no reason to think that the district court abused its discretion.

### B.    Law of the case

Next, McFalls argues that the original judge's decision to run Count 1 concurrently was the law of the case, binding upon Judge Haynes.

The resolution of this argument follows naturally from a finding that the remand was general. As noted above, a general remand wipes the slate clean. The consequence is that the law of the case doctrine does not apply with respect to the original sentencing. *See Moored*, 38 F.3d at 1422 (holding that the law-of-the-case doctrine is inapposite after a general remand). The Supreme Court recognized this principle in *Pepper*, 131 S. Ct. at 1251. In that case, one of the parties invoked the law-of-the-case doctrine, but the Court rejected it, holding that what was at one point the law of the case was wiped clean by a general remand. *Id.*

### C.    Waiver

McFalls also argues that the Government waived its right to object to the concurrent sentence because the Government neither objected to it during the original sentencing nor raised the issue during the initial appeal. Accordingly, the Government should not now, on this second appeal, be allowed to challenge the original sentencing judge's decision to run Count 1 concurrently with McFalls's state sentence.

The argument is misplaced. It is true that the waiver doctrine bars a party who fails to appeal a district court's final order from raising the issue in subsequent appeals in the same case. *United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000). It is also true that the Government did not appeal the original district court's decision to run the sentence for Count 1 concurrently to the state sentence. But it is *not* true that the Government is seeking to raise it now, on this second appeal. To the contrary, the Government seeks an affirmance of the re-sentence. Presumably the Government was

content with the original sentence just as it is presently satisfied with the revised sentence. The waiver argument is therefore inapplicable. While McFalls may not be happy with the position the Government took at the resentencing hearing, nothing required the Government to take the same position once the career-offender designation no longer applied.

### D.     Due Process

McFalls is obviously upset by the fact that he received a potentially harsher sentence after winning his appeal. Although McFalls does not utter the words, he raises the specter of a Due Process violation.

This Court has previously noted that the right to Due Process prohibits a court from imposing a harsher sentence on a defendant to punish him for exercising his right to appeal. *Gonzales v. Wolfe*, 290 F. App'x 799, 812–13 (6th Cir. 2008) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)). To protect a defendant's Due Process rights, "appellate courts must apply a presumption that the trial court acted vindictively when a harsher sentence is imposed following appeal." *Gonzales*, 290 F. App'x at 813 (citing *Pearce*, 395 U.S. at 726). "When this presumption applies, reversal is required unless the reasons for the longer sentence are apparent from the record." *Gonzales*, 290 F. App'x at 813 (citing *Pearce*, 395 U.S. at 726). One exception to this presumption, as recognized by the Supreme Court, is where a *different* judge imposes a sentence after appeal. *Goodell v. Williams*, 643 F.3d 490, 499–500 (6th Cir. 2011) (citing *Texas v. McCullough*, 475 U.S. 134 (1986)); *Gonzales*, 290 F. App'x at 813. This exception applies because a sentencing judge uninvolved in an earlier sentence lacks a personal stake in the outcome of later proceedings and thus would have little motive to act vindictively. *Gonzales*, 290 F. App'x at 813 (citing *McCullough*, 475 U.S. at 140 n.3). When there is no presumption of vindictiveness, the defendant must show actual vindictiveness. *Gonzales*, 290 F. App'x at 813.

Here, the resentencing judge is different from the original sentencing judge, so the presumption of vindictiveness does not apply. As McFalls has offered no evidence

of actual vindictiveness, it therefore cannot be said that his Due Process rights were violated.

### E.    Calculated Risk

One final note.  The Government points out that McFalls took a calculated risk that a remand would result in a potentially harsher sentence.  This Court has expressed the same sentiment before in *United States v. Duso*, 42 F.3d 365 (6th Cir. 1994):

> There is a calculated risk taken by a defendant in appealing his sentence computation.  If the defendant convinces a court on appeal that the sentence was wrongly computed and the court remands for resentencing, there appears to be no prohibition in the guidelines, or in the case law interpreting the guidelines, keeping a district judge from revisiting the entire sentencing procedure unless restricted by the remand order . . . . The sentencing guidelines are labyrinthian, and, as this case illustrates, there may be more than one route to the same destination . . . . What occurred here and what has occurred in other sentencing cases before this court, however, should put defendants and the defense bar on notice that it is possible for the appeal of a sentence to result in a Pyrrhic victory.

*Id.* at 368–69.

### III.    CONCLUSION

Accordingly, we **AFFIRM**.