**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0223n.06
Filed: March 24, 2009

**No. 07-1917**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western |
| LORNE EUGENE OSBORN, | ) | District of Michigan |
| | ) | |
| Defendant-Appellant. | ) | |

Before:        BOGGS, Chief Judge; and GILMAN and ROGERS, Circuit Judges.

**BOGGS, Chief Judge**. Lorne Osborn, having been deprived of his opportunity to appeal because of ineffective assistance of counsel, now takes a belated appeal as of right from his 2004 conviction for the manufacture of marijuana plants. He raises two alleged errors in his sentence, arguing that it should be vacated because the sentencing judge relied on acquitted conduct and because his sentence was imposed pursuant to the mandatory Guidelines scheme invalidated by *United States v. Booker*, 543 U.S. 220 (2005). In addition, he argues that should we vacate his sentence and remand for resentencing, we should also vacate the district court's decision to run his sentence consecutively with an unrelated state sentence. Because we agree that the sentence violates the rule of *Booker*, we remand for the limited purpose of resentencing under the now advisory Guidelines.

No. 07-1917
United States v. Osborn

## I

In 2002, during the course of a lawful search of the residence shared by Osborn and Kraig Earl Roberts, police discovered 754 marijuana plants. Osborn eventually pled not guilty to the charge of manufacturing more than 100 marijuana plants. After a jury trial, he was found guilty of a lesser-included offense – the manufacturing of 50-99 marijuana plants.

At sentencing, the district court calculated the initial offense level at 22, based on the total number of seized marijuana plants. Osborn, having two prior convictions for crimes of violence, was found to be a career offender, and the court accordingly increased his offense level by 10 and assigned him a criminal history category of VI. Under the then-mandatory guidelines, this offense level and criminal history carried a Guidelines range of 210 – 260 months of imprisonment. The court, explaining that it had "carefully considered the factors in 18 U.S.C. Section 3553," sentenced Osborn to 210 months of imprisonment. The court imposed this bottom-of-the-Guidelines-range sentence because it did "not appear that much is accomplished by sentencing him to above the bottom of the guideline range."

At the time, Osborn had also been convicted and sentenced for an unrelated state offense that he committed after his arrest but prior to his federal conviction.[1] Because his term of imprisonment for his state offense had not yet been discharged, Osborn argued that the sentences should run concurrently with each other. The court recognized that it had discretion under U.S.S.G.

---

[1] Osborn was convicted in a Michigan court on July 18, 2002 for "Operating Under the Influence" and for "Resisting and Obstructing a Police Officer," and sentenced to 38 to 60 months of imprisonment. He served 56 months on this sentence and is now in federal custody.

§ 5G1.3(c) to run the federal sentence consecutively or concurrently to the state punishment in order to "achieve a reasonable punishment for the instant offense," and decided that the sentences were to be consecutive. Osborn requested that his attorney file an appeal, but no papers were filed on his behalf after the notice of appeal.

Some years later, Osborn petitioned the district court *pro se* under 28 U.S.C. § 2255, alleging ineffective assistance of counsel for failure to perfect his appeal. His original trial counsel admitted that he had failed to pursue Osborn's appeal as requested. The district court granted the petition and gave Osborn leave to file an appeal. This appeal followed.

**II**

**A**

Osborn concedes that under our decision in *United States v. White*, 551 F.3d 381 (6th Cir. 2008) (en banc), the sentencing court's reliance on the total number of marijuana plants found (and not just the convicted conduct) was permissible. Accordingly, he now presses only his *Booker* claim.

Under our case law, a sentence such as Osborn's, imposed under the prior understanding that the Guidelines were mandatory, is plain error (Osborn failed to object below to the mandatory application of the Guidelines), and we presume that such an error affected the defendant's substantial rights so as to entitle him to a new sentencing hearing under the now-advisory Guidelines regime. *See United States v. Barnett*, 398 F.3d 516, 525-28 (6th Cir. 2005). The government, however, can rebut the presumption of prejudice on a showing that "the trial record

contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime." *Id.* at 529.

The government acknowledges that this showing is not an easy one to make, but alleges that this is the rare case in which the record actually contains clear and specific evidence that the sentence would have been the same under an advisory regime. Specifically, the judge's decision as to whether Osborn's sentence was to run consecutive or concurrent with the federal sentence was, by law, based on the judge's discretion in light of the § 3553(a) factors. *See* U.S.S.G. § 5G1.3(c). This is the same decision-making process a district court judge now uses to sentence a defendant under the advisory regime. Accordingly, the government argues that we should be confident that Osborn would have received the same sentence if the judge had understood that the Guidelines were not binding.

We disagree. First, as seductive as the government's reasoning may be, the proposition that an exercise of discretion against the defendant rebuts the prejudice presumption has been flatly rejected as insufficient to demonstrate that the court's view of the Guidelines – later determined to be erroneous – did not affect the length of the sentence. *See Barnett*, 398 F.3d at 529 (holding that a "middle-of-the-range sentence . . . is insufficient to rebut the presumption that Barnett was prejudiced . . . ."); *see also United States v. Hudson*, 405 F.3d 425, 445 (6th Cir. 2005) ("As careful as the judge's deliberations were, these reflections, offered at a time when the Guidelines were considered mandatory, do not constitution 'clear and specific evidence' that the judge would today . . . [impose the same] sentence . . . ."). Second, a bottom-of-the-range sentence like Osborn's tends to bolster the presumption even where other portions of the record cut against resentencing

because it suggests an "even greater chance" that the district court would have imposed a lower sentence had it known that the Guidelines were advisory. *United States v. Trammel*, 404 F.3d 397, 402 (6th Cir. 2005). Third, the district court's decision to run Osborn's sentences consecutively was not parallel to post-*Booker* sentencing in an important way: it was made subsequent to and independent of the calculation of a mandatory Guidelines range. *Cf. Oregon v. Ice*, 129 S. Ct. 711, 717 (2009) (distinguishing between the imposition of a sentence for a discrete crime and the decision to run that sentence concurrently or consecutively with another sentence). Indeed, the application note to § 5G1.3 expressly distinguishes between the concurrent/consecutive decision and a downward departure that alters the length of a sentence. *See* U.S.S.G. § 5G1.3, comment. (n.3(E)) ("Unlike subsection (b), subsection (c) does not authorize an adjustment of the sentence for the instant offense . . . ."). Even on the best view of the government's argument, then, we are in doubt as to whether the district court's sentence was independent of its mandatory view of the Guidelines.

In fact, the record contains ambiguity that cuts against a finding that the presumption has been rebutted. While it is clear that the sentencing judge understood his discretion to impose a "reasonable" sentence, he also emphasized in the course of exercising that discretion that the Guidelines were mandatory: "The punishment is what it is. The reasonable punishment *under the guidelines* will begin when he's completed his [state] sentence . . . ." (emphasis supplied). This could be interpreted as an indication that the district court thought that the punishment mandated by the Guidelines should not be affected by the fact of a wholly unrelated state offense. *Cf. Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (per curiam) (holding that it was error for a district court to presume a within-the-Guidelines sentence was reasonable). This reading finds additional support

in the district court's explanation in support of the determination that it saw "no basis . . . to run this sentence concurrently." Because arriving at a reasonable sentence from scratch is different from arriving at it by declining to find an otherwise mandated sentence unreasonable, the court's conclusion that it was reasonable is likely a product of adhering to the Guidelines. *See Hudson*, 405 F.3d at 445. Even if this reading is ultimately incorrect and the sentencing court's decision did approximate the post-*Booker* sentencing process, the plausibility of an interpretation that the court felt bound by the Guidelines defeats any claim that the record clearly and specifically establishes a lack of prejudice.

Accordingly, we hold that Osborn's sentence was plain error that affected his substantial rights and that he is entitled a sentence imposed under the proper, advisory Guidelines regime.

**B**

There is a dispute about what comes next. Specifically, the parties disagree over whether the sentencing hearing on remand should include a relitigation of the decision to run Osborn's sentence consecutive to the unrelated state sentence. It should not. (For clarity, we underscore that the district court's decision on that score was not in error, *see United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998), and that it is not affected by our decision today.) Whatever sentence the district court imposes will therefore be consecutive to the (now discharged) state sentence.

Nevertheless, Osborn also argues that the district court should be free to consider, in its application of the § 3553(a) factors, the fact that his federal sentence is consecutive to a state

sentence because it bears on the total length of his incarceration. We express no opinion as to the merit of the argument that a defendant's unrelated state sentence affects the reasonableness of his federal sentence, but agree that the current sentencing scheme permits a district court to acknowledge the fact of an unrelated state sentence. To the extent that our admonition that "consideration of *post-sentencing* factors is incompatible with the limited scope of a *Booker* remand," *United States v. Keller*, 498 F.3d 316, 324 (6th Cir. 2007) (emphasis supplied), bars the district court from considering Osborn's time served, Osborn argues and we agree that the court need not do so in order to take into account the *fact* of a consecutive sentence (whether or not discharged). In short, as in other *Booker* remands that occurred before this case, the district court is to correct the *Booker* error and sentence Osborn, under an advisory guideline regime, to a reasonable sentence. *See, e.g.*, *United States v. Haynes*, 468 F.3d 422, 426 (6th Cir. 2006) ("Remands 'in light of *Booker*' are concerned with sentencing . . . ."); *United States v. Settle*, 414 F.3d 629, 632 (6th Cir. 2005) ("On [*Booker*] remand, the district court must impose a reasonable sentence that takes into account the sentencing factors set forth at 18 U.S.C. 3553(a), as well as the Sentencing Guidelines.")

**III**

For the above reasons, we VACATE Osborn's sentence and REMAND for resentencing consistent with this opinion and with the Supreme Court's decision in *Booker*.