*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0361p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

*v.*

No. 09-2031

TIMOTHY ALLEN GIBBS,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00003-001—Robert Holmes Bell, District Judge.

Argued:  October 22, 2010

Decided and Filed:  November 24, 2010

Before:  GUY and GRIFFIN, Circuit Judges; BARZILAY, Judge.[*]

_____

## COUNSEL

**ARGUED:**  Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant.  Jennifer L. McManus, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant.  Russell A. Kavalhuna, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

[*]The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

---

**OPINION**

---

RALPH B. GUY, JR., Circuit Judge.  Defendant Timothy Allen Gibbs appeals after resentencing on his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Defendant argues that the district court erred on remand by failing to impose sentence concurrently, or partially concurrently, to a completed state sentence, or in a manner that would have that result.  Defendant also claims that the district court erred by not recalculating his advisory Guidelines range where:  (1) his criminal history score would have been lower under a subsequent amendment to the Guidelines, and (2) his offense level had been determined under a now incorrect understanding of what constitutes a "crime of violence."  Finding that subsequent developments in the law with respect to the definition of a "crime of violence" render the calculation of defendant's advisory Guidelines range plain error, we vacate defendant's sentence and remand for resentencing consistent with this opinion.

**I.**

Gibbs was a convicted felon on state parole when a search conducted on August 10, 2005, resulted in the seizure of a semiautomatic pistol, ammunition, and other items from the basement bedroom he occupied in the house he shared with his mother. Defendant was charged with violating several conditions of his parole, although those charges were not resolved until after his initial federal sentencing.  State criminal charges also brought at the time of defendant's arrest, including a felon-in-possession charge, were dismissed after the federal indictment was returned on January 5, 2006. Defendant was arrested on the federal charge on January 10, 2006, and was convicted by a jury of being a felon in possession of a firearm on March 27, 2006.

At sentencing on June 26, 2006, the district court determined, without objection, that defendant had a total offense level of 24 because he had two or more prior

convictions of a "crime of violence," and a criminal history category of VI. As a result, defendant's Guidelines range was 100 to 125 months' imprisonment. Defendant argued, among other things, that his sentence should be ordered to run concurrently with the yet-to-be imposed state parole violation sentence, relying explicitly upon the U.S. Sentencing Guidelines Manual (USSG) § 5G1.3(c) (2006). The district court, addressing this issue briefly, appeared to conclude that § 5G1.3(c) would *require* a consecutive sentence. After considering the relevant sentencing factors under 18 U.S.C. § 3553(a), the district court sentenced defendant at the low end of the Guidelines range to a 108-month term of imprisonment and ordered that the sentence be served consecutively to any state sentence yet-to-be imposed for violating the conditions of his parole. Defendant appealed.

This court affirmed defendant's conviction, but held—for the first time—that treating the permissive language of § 5G1.3(c) "as leaving the district court without discretion to impose a federal sentence concurrent or partially concurrent with an undischarged term of state imprisonment [was] reversible error requiring a remand for resentencing." *United States v. Gibbs*, 506 F.3d 479, 488 (6th Cir. 2007). By that time, defendant's parole had been revoked based on his possession of the firearm, and he was serving a 60-month sentence for the parole violation. Defendant was paroled again and delivered to federal authorities in January 2009, but was not resentenced on the federal conviction until July 2009.[1]

At resentencing on July 30, 2009, the district court first declined to recalculate the Guidelines range on the grounds that the issue was outside the scope of the remand, and then explained that it had "obviously misspoke[n]" at the original sentencing by stating that § 5G1.3(c) required the imposition of a consecutive sentence. Defense counsel urged the district court to exercise its discretion and either impose a concurrent

---

[1]The government argues for the first time that the initial imposition of a consecutive sentence was erroneous for a different reason. That is, we have held that a district court may not order a sentence to be served consecutively to a yet-to-be imposed sentence. *United States v. Quintero*, 157 F.3d 1038, 1039-40 (6th Cir. 1998); *see also United States v. Setser*, 607 F.3d 128, 131 n.1 (5th Cir.) (identifying split among the circuits on the issue), *petition for cert. filed*, __ U.S.L.W. __ (U.S. Nov. 2, 2010) (No. 10-7387). The government concedes, however, that this also would have required remand for resentencing.

or partially concurrent sentence, or, at least, take into account the time served on the state sentence in considering the § 3553(a) factors. The colloquy that followed shifted between the defendant's argument for a concurrent sentence and a discussion of the credit defendant might receive for time served on his then-completed state sentence. In the end, the district court reimposed a sentence of 108 months, omitted the earlier order of a consecutive sentence, and added a recommendation to the Bureau of Prisons (BOP) that defendant receive credit for time served since his arrest on the federal charge on January 10, 2006. This appeal followed.

## II.

This court reviews challenges to the reasonableness of a defendant's sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). While there is both a procedural and a substantive component to the reasonableness inquiry, defendant's claims of error have been framed in terms of procedural unreasonableness. *Id.* If defense counsel does not object with a reasonable degree of specificity to a purported procedural error, a plain error standard of review applies. *United States v. Simmons*, 587 F.3d 348, 353-54 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 2116 (2010); *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004).

### A.      USSG § 5G1.3(c)

A district court has discretion to order a federal sentence to run either concurrently or consecutively to an undischarged term of imprisonment. *See*, 18 U.S.C. § 3584(b); *United States v. Johnson*, 553 F.3d 990, 997 (6th Cir. 2009); *United States v. Watford*, 468 F.3d 891, 915-16 (6th Cir. 2006). That determination is based, in part, on the Guidelines and policy statements of the Sentencing Commission. *Johnson*, 553 F.3d at 997. In particular, the first appeal involved the application of USSG § 5G1.3(c), which provides that "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently,

partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."**2**

At resentencing, defendant continued to urge the district court to impose a partially concurrent sentence under § 5G1.3(c), but also argued that the district court could adjust the length of the sentence to take into account the time served for which the BOP might not give him credit. The district court expressed the view that defendant should receive credit for time served from the time of his arrest on the federal warrant on January 10, 2006—rather than from his release to federal custody in January 2009—but recognized that the power to determine such credit would lie solely with the Attorney General and the Bureau of Prisons. *See* 18 U.S.C. § 3585(b); *United States v. Wilson*, 503 U.S. 329, 333 (1992). Rather than adopting either of defendant's suggestions, the district court imposed the same within-Guidelines sentence of 108 months' imprisonment with credit for time served from January 10, 2006. The amended judgment specifically recommended that defendant receive such credit.

Claiming error, defendant argues first that the amended judgment did not accurately reflect the oral pronouncement of sentence in which the district judge stated that he "want[ed] to give [defendant] credit" for time served from January 10, 2006. The record does not support this claim, however. The district judge explained more than once that although he could make a recommendation in the judgment, the BOP would not necessarily accept his calculation of the credit for time served. The district judge not only explicitly recognized that his recommendation would not be binding on the BOP, but also dispelled any possible lingering confusion about whether he intended to make just such a recommendation. Specifically, in response to the government's request for clarification, the district judge confirmed that the sentence was 108 months' imprisonment with credit for time served from January 10, 2006, adding that there were no guarantees as to what the BOP would decide to do. Moreover, when asked whether

---

**2**The application notes also provide that when the offense was committed while on parole and that parole has been revoked, "the Commission *recommends* that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." USSG § 5G1.3 cmt. n.3(C) (emphasis added).

there were any further objections, defense counsel confined his objections to the district court's decision not to revisit the calculation of the Guidelines range.

Although defendant states in passing that the district court failed to expressly address the application of § 5G1.3(c), it was acknowledged at resentencing that the defendant no longer had an undischarged term of imprisonment. Because § 5G1.3(c) only applies when a defendant has an undischarged term of imprisonment at the time of sentencing, we find no error by the district court. *United States v. Carpenter*, 359 F. App'x 553, 557-58 (6th Cir. 2009); *United States v. Newby*, 13 F. App'x 324, 325-26 (6th Cir. 2001) (citing cases).

Indeed, defendant has abandoned reliance on § 5G1.3(c) and argued that the district court failed to recognize its discretion to take into account the already discharged sentence in weighing the § 3553 factors. *See United States v. Osborn*, 318 F. App'x 371, 375 (6th Cir. 2009). The record is clear, however, that defense counsel urged the district court to exercise its discretion to impose a lesser sentence in consideration of the § 3553(a) factors in order to avoid the uncertainty that would come with the non-binding recommendation regarding credit for time served. The fact that the district court declined to do so does not demonstrate a failure to recognize the discretion to do so. Nor is there any indication in the record that the district court did not understand or recognize its discretion in this regard.[3]

**B.     Guidelines Calculation**

**1.     Scope of Review**

Before considering the merits of defendant's additional claims, we must address the scope of the remand and the government's assertion of waiver. "The basic tenet of

---

[3]We note for completeness that shortly before oral argument defendant was granted administrative relief in the form of a *nunc pro tunc* designation of the state facility where he was serving his state sentence to be the institution for service of his federal sentence. This effectively made the federal sentence concurrent to the state sentence commencing with the imposition of his federal sentence on June 26, 2006. This means that only the period between January 10, 2006, and June 26, 2006, is time for which the defendant will not receive a concurrent sentence. Defense counsel insisted at oral argument that this partial relief did not alter his position on appeal with respect to the recommendation that he receive credit for time served.

the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).  A limited remand must "explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate," while a general remand gives the district court "authority to address all matters as long as remaining consistent with the remand." *Id.*  Whether a remand is limited or general is a legal question that we review *de novo*. *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997).[4]

Generally, district courts can review sentencing matters *de novo* unless the remand specifically limits the inquiry, but "[t]he language used to limit the remand should be, in effect, unmistakeable." *Campbell*, 168 F.3d at 268.  Such language may appear anywhere in the opinion, but must be viewed in the context of the entire opinion. *Id*. at 266-68.  In this case, although we identified a discrete sentencing issue that required remand, our opinion did not articulate a framework for the proceedings on remand or otherwise limit the district court's inquiry to that issue in unmistakeable terms.  Rather, we vacated the sentence and remanded "for resentencing consistent with this opinion." *Gibbs*, 506 F.3d at 488.  Thus, our remand was general and did not preclude the district court from revisiting the Guidelines calculation. *Cf. Moore*, 131 F.3d at 597 (remanded for further proceedings for the parties to address the defendant's use and carrying of the firearm and adhering to the prior opinion in all other respects); *Campbell*, 168 F.3d at 268 (holding that fine imposed was improper and remanding with direction for the district court to change it); *United States v. O'Dell*, 320 F.3d 674, 680-81 (6th Cir. 2003) (remanding for "resentenc[ing] without application of the safety valve").

Next, the government argues that the defendant waived these issues by failing to raise them in the first appeal.  Generally, the "law-of-the-case doctrine bars challenges

---

[4]Even when a remand is limited, exceptions to the mandate rule arise "where there is substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice." *Campbell*, 168 F.3d at 269 (citation and internal quotation marks omitted).

to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997); *see also United States v. McKinley*, 227 F.3d 716, 718-19 (6th Cir. 2000) (holding government waived argument for additional firearm enhancement by not raising it during the first appeal); *United States v. Sedore*, 512 F.3d 819, 827 (6th Cir. 2008) (holding defendant waived opportunity to dispute admission as to number of victims by failing to raise it in the first appeal).

Defendant responds that the subsequent amendment to the Guidelines and recent developments in the controlling law concerning what constitutes a "crime of violence" were not issues that should have been raised in the first appeal. We need not decide this, however, because the government waived its "waiver" argument by affirmatively taking the position on remand that the district court could revisit the Guidelines calculations. *See United States v. Boudreau*, 564 F.3d 431, 435 (6th Cir.) (finding government waived waiver argument by proceeding on remand without asserting the issue had been waived by not raising it on appeal), *cert. denied*, 130 S. Ct. 776 (2009). This brings us to the merits of these claims.

### 2.        **Criminal History**

Defendant argued at resentencing for application of the intervening amendment to USSG § 4A1.2(A)(2), which altered the way in which prior sentences are counted. *See* USSG App. C, amend. 709 (eff. Nov. 1, 2007). However, as defendant acknowledges on appeal, the district court properly applied the Guidelines in effect at the time of the original sentencing. *See* 18 U.S.C. § 3742(g)(1); *United States v. Williams*, 411 F.3d 675, 678 (6th Cir. 2005). Further, this and other courts have held that Amendment 709 is not a clarifying amendment and may not be applied retroactively. *United States v. Vassar*, 346 F. App'x 17, 28 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3343 (2010); *United States v. Wood*, 526 F.3d 82, 88 (3d Cir. 2008); *United States v. Marler*, 527 F.3d 874, 877 n.1 (9th Cir. 2008).

Even if the amended Guidelines did apply, however, defendant's criminal history category would not have been different. Defendant argues that under the amended

Guidelines, four prior sentences that were counted separately would instead be counted as two prior sentences for a criminal history score of 12 and a criminal history category of V. The government concedes that the two prior sentences referenced in paragraphs 30 and 31 of the Presentence Report (PSR) would be counted as one under the amended Guidelines because there was no intervening arrest and the sentences were imposed on the same day. However, because the other two sentences—referenced in paragraphs 27 and 29 of the PSR—were separated by an intervening arrest, they would still be counted separately. Since defendant's criminal history score would have been 15 and defendant would still have had a criminal history category of VI, the amended Guidelines would not have affected the calculation of defendant's Guidelines range.[5]

### 3.    Offense Level

Defendant's offense level was determined under USSG § 2K2.1(a)(2), which provides for a base offense level of "**24**, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." Defendant was found, without objection, to have at least two prior felony convictions for a "crime of violence." Defendant's failure to object at sentencing limits our review to plain error.

A "crime of violence" is defined as a felony that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; or (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a); *see also* USSG § 2K2.1 cmt. n.1. The last of these, referred to at times as the "residual" or "otherwise" clause, has been limited to crimes that "are roughly similar, in kind as well as in degree of risk posed," to the enumerated examples. *Begay v. United States*, 553 U.S. 137, 143 (2008); *see also United States v. Bartee*, 529 F.3d 357, 363 (6th Cir. 2008).

---

[5]For this reason, we need not address defendant's further suggestion that we remand for resentencing to allow the district court to take the amendment into consideration in imposing sentence. *See United States v. Godin*, 522 F.3d 133, 136 (1st Cir. 2008) (remanding for resentencing); *but see United States v. Matos*, 611 F.3d 31, 39 (1st Cir. 2010) (distinguishing *Godin* and denying request for remand).

In determining the nature of a prior conviction, we are to apply a "categorical" approach, looking to the statutory definition of the offense and not the particular facts underlying the conviction. *Taylor v. United States*, 495 U.S. 575, 600 (1990). If it is possible to violate the statute in a way that would constitute a crime of violence and in a way that would not, the court may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction. *Shepard v. United States*, 544 U.S. 13, 26 (2005). At issue in this case are three potentially qualifying prior convictions—one each for second-degree home invasion, "walkaway" prison escape, and resisting and obstructing an officer.[6]

### a.     Second-Degree Home Invasion

Defendant conceded at his initial sentencing that his plea-based conviction for second-degree home invasion was properly counted as a "crime of violence." On remand, defendant argued for the first time that, in fact, the house could not have been an "occupied dwelling" under Michigan law because the residents had died and the house was vacant. *See People v. Hider*, 351 N.W.2d 905, 907-08 (Mich. Ct. App. 1984). In essence, however, this is a challenge to the factual basis of the underlying conviction; not to whether the conviction was for a "crime of violence."

Second-degree home invasion is defined under Michigan law as committed by one who "breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling," or "enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling," or "enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault." MICH. COMP. LAWS § 750.110a(3). As this court has previously recognized, a conviction for second-degree home invasion under Michigan law is the equivalent of the enumerated offense of burglary of a dwelling and therefore constitutes a "crime of violence." *See United States v. Hart*, 104 F. App'x 469, 470 (6th

---

[6]We determine a "crime of violence" under the Guidelines in the same way as a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because both share essentially the same definitions. *Bartee*, 529 F.3d at 359 (citing *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995)).

Cir. 2004); *United States v. Horton*, 163 F. App'x 378, 382 (6th Cir. 2006); *United States v. Howard*, 327 F. App'x 573, 575-76 (6th Cir. 2009).

### b.      "Walkaway" Prison Escape

Michigan defines prison escape, in pertinent part, as occurring when a person imprisoned by the state, "breaks prison and escapes, breaks prison though an escape is not actually made, escapes, leaves the prison without being discharged by due process of law, attempts to break prison, or attempts to escape from prison." MICH. COMP. LAWS § 750.193(1).  Defendant's prior plea-based conviction for prison escape was counted as a "crime of violence," although he asked the district court to consider that it was essentially a "walkaway" escape from a community correction center.  In fact, defendant explained during the plea colloquy that he had left the facility where he was assigned without permission.  The government concedes, as it did even on remand, that this conviction for "walkaway" prison escape does not constitute a "crime of violence" in light of the decisions in *Chambers v. United States*, 555 U.S. __, 129 S. Ct. 687, 690-92 (2009), and *United States v. Ford*, 560 F.3d 420, 423-25 (6th Cir. 2009).  We agree.[7]

Before the decision in *Chambers*, this court had largely "taken the view that all escape offenses—from a failure to report at one end of the spectrum to a breakout at the other—constitute crimes of violence." *Ford*, 560 F.3d at 423 (citing cases).  The Court in *Chambers* held that one type of escape under the Illinois statute—a failure-to-report escape—was not a "violent felony" under the ACCA. 129 S. Ct. at 691-92.  This, we concluded in *Ford*, also established that a failure-to-report escape is not a "crime of violence." 560 F. 3d at 423.  We did not stop there, however, and applied the same reasoning to conclude that a "walkaway" escape conviction under Kentucky law was not unambiguously a "crime of violence." *Id.* at 425.

To recap: the first question in this case—the *Taylor* question—is whether the definition of the state-law offense by itself establishes that

---

[7]Defendant attempted to raise this issue in a Rule 28(j) letter filed during the pendency of the first appeal in reliance on this court's pre-*Chambers* decision holding that a "failure to report" escape conviction under the Michigan statute was not a "violent felony" for purposes of the ACCA. *United States v. Collier*, 493 F.3d 731, 737 (6th Cir. 2007).

it is a "crime of violence."  A conviction for second-degree escape does
not show that Ford committed a crime of violence because the offense
covers a variety of escapes, some of which (a failure to report and to
return, at least) are not crimes of violence.  The second question—the
*Shepard* question—is whether the government nonetheless can show that
the state-law conviction was a crime of violence by bringing forward
reliable documents from the underlying conviction that "necessarily"
establish that the defendant committed a crime of violence.  Here, the
parties agree, reliable documents show that Ford committed a
"walkaway" escape, which no doubt may create a greater risk of physical
injury than a failure to report, but which remains different from a
jailbreak and other crimes of violence both in kind and in its risk of
physical injury to others.  For these reasons and those elaborated above,
a walkaway is not a crime of violence.

*Id*. at 426.  The parallel between the Kentucky "walkaway" escape and defendant's
Michigan conviction for "walkaway" escape is self-evident.  The Michigan statute
covers a variety of escapes, including at least one which is not a crime of violence.  We
recognized in *Ford* that, "in the aftermath of *Chambers*, a 'walkaway' is a meaningfully
distinct and meaningfully distinguishable category of escape as a matter of federal law."
*Id*. at 424.  We also concluded that a "walkaway" escape does not present the same risk
of physical injury to others, or the same type of "purposeful, violent, and aggressive"
conduct, as do the listed crimes of violence.  *Id.* at 424-25 (quoting *Chambers*, 129 S.
Ct. at 692 (internal quotation marks omitted)).  Defendant's "walkaway" escape
conviction may not be counted as a "crime of violence."

### c.       Resisting and Obstructing an Officer

On remand, the government argued that defendant's conviction for resisting and
obstructing an officer may be counted as a second "crime of violence."  Defendant
pleaded guilty to resisting and obstructing an officer in violation of former Mich. Comp.
Laws § 750.479 (2001), which made it unlawful to:

knowingly and willfully obstruct, resist or oppose any sheriff, . . . or
other officer or person duly authorized, in serving, or attempting to serve
or execute any process, rule or order made or issued by lawful authority,
or who shall resist any officer in the execution of any ordinance, by law,
or any rule, order or resolution made, issued, or passed . . . or who shall

> assault, beat or wound any sheriff, . . . or other officer duly authorized,
> while serving, or attempting to serve or execute any such process, rule or
> order, or for having served, or attempted to serve or execute the same, or
> who shall so obstruct, resist, oppose, assault, beat or wound any of the
> above named officers, or any other person or persons authorized by law
> to maintain and preserve the peace, in their lawful acts, attempts and
> efforts to maintain, preserve and keep the peace[.]

This court has concluded, in reliance on *Chambers*, that a conviction for resisting and obstructing an officer under Mich. Comp. Laws § 750.81(d), a related Michigan statute, is not categorically a crime of violence. *United States v. Mosley*, 575 F.3d 603, 606-07 (6th Cir. 2009).

As we explained in *Mosley*, the first and often "key" analytical step is determining whether "the state-law definition of the offense involves just one category or two or more categories of crimes" and that "sometimes that choice requires the federal courts to draw distinctions that the state law on its face does not draw." *Id*. at 606 (citing *Chambers*, 129 S. Ct. at 690). Identifying "at least one obvious fault line," we found that the Michigan resisting-and-obstructing statute contained "at least two categories—those violations, on the one hand, involving an individual who physically injures an officer because he 'assaults, batters, [or] wounds' the officer, and those, on the other hand, involving an individual who 'obstructs' an officer through a 'knowing failure to comply with a lawful command.'" *Id*. at 607 (citations omitted). Moreover, we quickly concluded that a typical failure-to-comply obstruction offense would not qualify as a "crime of violence" because it "does not involve comparable 'purposeful, violent, and aggressive' conduct" or create the same degree of risk of physical injury as the enumerated offenses. *Id*. (quoting *Begay*, 553 U.S. at 144).

The analysis in *Mosley* applies equally to defendant's conviction because the resisting and obstructing statute at issue likewise involves at least two categories of crimes, one of which is not categorically a "crime of violence." *See United States v. Blomquist*, 356 F. App'x 822, 827 (6th Cir. 2009) (applying *Mosley* to conviction under Mich. Comp. Laws § 750.479). *Mosley* dictates the answer to the *Taylor* question in this case—that the conviction does not categorically qualify as a "crime of violence"—but

does not resolve the *Shepard* question. That is, in *Mosley*, we remanded for the government to have an opportunity to make a showing from reliable documents that the conviction necessarily constituted a "crime of violence." 575 F.3d at 608.[8]

Here, in contrast, the record already includes the charging document, the judgment of conviction, and the plea colloquy from which we may determine the nature of the offense. *Shepard*, 544 U.S. at 26. In particular, during the plea colloquy, defendant explained that he had been a passenger in a car that was the subject of a traffic stop and had run away from the officer to avoid being arrested on outstanding warrants. These records show, and the government does not dispute, that defendant's conviction was for violation of the knowing-failure-to-comply portion of the resisting and obstructing statute. *Accord United States v. Love*, 364 F. App'x 955, 958-59 (6th Cir. 2010) (holding that defendant who ran away from police in handcuffs committed the offense of obstruction through a knowing failure to comply with a lawful command). Thus, defendant's conviction for resisting and obstructing an officer does not qualify as a "crime of violence."

---

[8]Although the Michigan legislature amended these statutes to expressly define "obstruct" to include both "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful demand," *see* Mich. Comp. Laws §§ 750.81(d)(7)(a) and 750.479(8)(a), it was not a change in meaning but a clarification of the correct interpretation of the term. *Blomquist*, 356 F. App'x at 827.

**C.      Plain Error**

"In reviewing for plain error, we must consider whether there was plain error that affects substantial rights and that, in our discretionary view, seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings." *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005) (citing *Johnson v. United States*, 520 U.S. 461, 466 (1997)).  It is sufficient that the error be plain at the time of appellate consideration. *Johnson*, 520 U.S. at 466.

Having concluded that the defendant's prior convictions for "walkaway" prison escape and failure-to-comply obstruction no longer qualify as a "crime of violence" for purposes of the Guidelines, there was error under current law.  That error is also plain because *Begay* and *Chambers* clearly altered the analysis applicable to the question of whether a prior conviction constitutes a "crime of violence."  This error affected the defendant's substantial rights because with only one prior conviction for a "crime of violence"—rather than two or more—the defendant's offense level would have been 20 instead of 24. *See* USSG § 2K2.1(a)(4)(A).  A total offense level of 20 and a criminal history category of VI would have resulted in an advisory Guidelines range of 70 to 87 months' imprisonment, which is substantially lower than the range of 100 to 125 months found to apply initially and on remand. Finally, although clearly the result of subsequent changes in the law, this error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Baker*, 559 F.3d 443, 453-55 (6th Cir. 2009).

Accordingly, we **VACATE** defendant's sentence and **REMAND** for resentencing in light of the determination that the prior convictions for escape and resisting and obstructing an officer do not constitute crimes of violence for purposes of computing the defendant's offense level.