NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0165n.06

Case No. 19-5462

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 19, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| JEWEL DEONTA SIMS, | ) | THE MIDDLE DISTRICT OF |
|  | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
|  | ) | |

BEFORE: NORRIS, DONALD, and NALBANDIAN Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Defendant-Appellant Jewel Deonta Sims seeks an order from this Court vacating the judgment of the district court and remanding the matter for a new sentencing hearing. In sentencing Sims, the district court did not adopt all of the perspectives and arguments Sims presented regarding his family circumstances. Because the district court did not exercise a blanket refusal to consider Sims' family circumstances in sentencing him, however, we **AFFIRM** the judgment below.

I.

On April 26, 2017, Sims was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Sims pleaded guilty to the single count indictment on January 29, 2019. Thereafter, the court set the matter for sentencing.

The Presentence Report ("PSR") calculated Sims' recommended imprisonment range as seventy to eighty-seven months under the Guidelines, based on a total offense level of twenty-three and a criminal history of category IV. It did not note any factors warranting a departure. In his objections to the PSR, Sims lodged a number of factual objections and requested a variance, departure, and/or adjustment below the advisory Guidelines range based on his inability to obtain a concurrent sentence with his state case and a second federal case as well as his mental health and medical conditions. After taking up and resolving Sims' factual objections, none of which changed the Guidelines range provided in his PSR, the district court accepted the recommendations of probation as articulated in the PSR. More specifically, the court found that Sims' base offense level was twenty-six, given that the offense involved a semiautomatic firearm capable of accepting a large capacity magazine or a firearm that is described in 26 U.S.C. § 5845(a) and that Sims committed a part of the instant offense subsequent to two felony convictions of a crime of violence or a controlled substance offense. U.S.S.G. § 2K2.1(a)(1). At the government's request, a three-level reduction was applied for Sims' acceptance of responsibility, giving him a total offense level of twenty-three. With a criminal history computation of nine points, establishing a criminal history category of IV, Sims' was subject to a Guidelines range of seventy to eighty-seven months, followed by one to three years of supervised release. Ultimately, the district court imposed a within-Guidelines sentence of eighty months of imprisonment, to run concurrent with his judgment in another federal case, followed by three years of supervised release.

At the start of Sims' sentencing hearing, the district court acknowledged that it reviewed letters submitted prior to the hearing from Sims' family, including letters from two daughters and

one son.[1]  The court also recognized that statements within those letters could be reviewed during sentencing.

During sentencing, the district court considered Sims' history and characteristics, stating as follows:

> [T]he Court feels compelled to comment on [] the notion of the Defendant having a family and that he should go back to his family.  And this is all very understandable.  I think Mr. Sims has family members that, from the letters, care about their father and husband.  They want him to come home. . . .
>
> I think I am compelled to say, [] that for me, although I always like to hear background about the client and I feel for the family members that are affected, it's difficult for me to grant leniency based on the wishes of the family or the desire to return to the family for several reasons. One is that they do not appear to me to be appropriately encompassed within the 3553(a) factors.
>
> Another thing is that the Court is loath to sort of discriminate against folks based on family status.  And what I mean by that is, if I had very similar situations where one person can, you know, appeal to the fact that they have a family that needs them and the other person doesn't, the Court is concerned about being unfair to the person that does not have those family members.  And that is a real issue for the Court especially when, let's face it, the one who doesn't have a family, he may be less culpable in the sense that he didn't put his family at risk of losing their valued family member by their behavior.
>
> . . . And the Court is always happy to hear from family members and understands their stories[.  Still,] the Court, in its view, would not be carrying out its responsibilities by affording that weight, even though it wants to be compassionate to family members.
>
> But the Court realizes that incarceration is always hard on family members; that's just part of the process. And I don't think this Court is speaking out of school when it says that these are the kinds of things that folks need to think about before they intentionally undertake the conduct that they know full well is going to risk getting them in trouble and taking them away from their family.
>
> Having said that, however, the Court does take note of the fact that the Defendant, although from what I can tell from the presentence report and the criminal history, has not always been prioritizing his family, the Court notes from the letters that he does have incentive to do so now.  From the documents filed today from [Sims' counsel], it appears that he is taking a new stance and trying to do something affirmative to turn his life around.  And that's very appropriate.

Sent. Hr'g Tr., R. 41, at PageID #148‑50.

---

[1] An additional letter written by one of Sims' sons was submitted and presented at the hearing, which the district took time to review.

Sims' counsel then addressed the court, stating that they viewed the appropriateness of considering Sims' family circumstances slightly different than the court—that, although each defendant's family circumstances may be different, it is properly considered given the individualized assessment required in imposing a sentence under the Guidelines. The court responded as follows:

> Yeah. Well, I understand, [your point], and I think you might get some courts to agree with you. I think, you know, for the reasons I said, I see it differently. I think I'm authorized to.
>
> But I will say this about this, and I am concerned about a Defendant who maybe—and there are some people—I know some—pretty much all alone in the world and they can't point to that. And I just don't want them to be disadvantaged.
>
> But having said that, I will tell you where I have thought about Mr. Sims' family and am taking into account, and it's on the issue of the need for incapacitation, meaning how likely is he motivated despite, I think, a history of unfortunate sort of inability to comply with the law? How motivated is he to turn his life around? And I reviewed your documents, and I like the statements that were made in what I was reading.
>
> I think—I have accounted for the fact that I think that it is likely that having those family members that are pulling for him, that want him there, will be a substantial motivating force. I just hope it's enough. But was I thinking about that when I'm thinking, you know what? After—you know, after—in addition to what time he's serving in Eastern Tennessee, how much time does he really need to serve extra? I did take that into account. So I appreciate that.

*Id.* at PageID #157-58.

After this discussion and others concerning the appropriate considerations in sentencing Sims under the Guidelines, the court pronounced a sentence of eighty months and adjourned the proceedings. Thereafter, the court resumed its proceedings to afford Sims an opportunity to address the court prior to judgment being entered and inform the parties of the Federal Bureau of Prisons' decision regarding Sims' sentencing credit, about which the parties previously expressed concern. When Sims addressed the court, he spoke, in part, of his family circumstances—namely, the effect of his behavior on his wife and kids as well as how he wanted to lead a better life and be a better example to his family.

The district court acknowledged Sims' statements and further explained how it considered Sims' family circumstances in sentencing him:

> And, Mr. Sims, I want to say a few things that go into my thinking about the sentence. You know, one thing I want you to know is that before going back over the sentence with you, I do want you to know that I heard what you said. And I'm also glad that you had an opportunity to do what I think you were doing, which was to address your family. I would say that your remarks were consistent with what I was picking up on this morning prior to sentencing from reading what you had written about your interest in helping prevent recidivism and something I would have guessed you were feeling about your children, because I read your children's letters and your wife's letters.
>
> My sense was that, you know, facing—even with your—even having a criminal history as you did, you hadn't been facing this kind of jail sentence that you are looking at now. And the Court's view was that this whole experience, including the desire to be back with your family, would motivate you to make those positive changes in your life and that, in the Court's view, those were things that would help the Court conclude that we didn't need two full sentences, one of 78 months and one of 80 months right on top of each other. We didn't need that, and the Court did take that into account.
>
> And so the Court certainly has heard what you're saying. It doesn't change the Court's analysis. I think it does highlight some things that the Court was thinking. And, you know, I—when I look at these cases, I'm always hopeful that folks that have been in trouble are committed to making positive change and that they are motivated to make a positive change. And I was picking up this morning that you were motivated to make a positive change. The sort of remarks you made here would tend to confirm that, the next positive step.

*Id.* at PageID #174-76. The court then restated Sims' eighty-month sentence.

Sims now asks this Court to vacate the judgment of the district court and remand his case for a new sentencing hearing. According to Sims, the district court erred in imposing his sentence by making a blanket refusal to consider information regarding Sims' family situation under 18 U.S.C. § 3553(a), rendering his sentence procedurally unreasonable.

## II.

"When evaluating a sentence for procedural reasonableness, we focus on how the district court calculated the sentence." *United States v. Potts*, 947 F.3d 357, 364 (6th Cir. 2020). "We ask whether the district court properly calculated the Guidelines range, remembered to treat that range

as advisory, considered the sentencing factors in 18 U.S.C. § 3553(a) while refraining from considering impermissible factors, selected the sentence based upon facts not clearly erroneous, and adequately explained why it chose the sentence." *Id.*

Our standard of review influences how we assess these considerations. *Id.* Where the defendant preserves a sentencing argument below, we review the district court's decision to reject that argument for an abuse of discretion. *United States v. Parrish*, 915 F.3d 1043, 1046-47 (6th Cir. 2019). Where no objection lies, or where "defense counsel does not object with a reasonable degree of specificity to a purported procedural error, a plain error standard of review applies." *United States v. Gibbs*, 626 F.3d 344, 349 (6th Cir. 2010).

Here, the district court, after announcing the sentence it intended to impose and its explanation for the sentence, including its hesitancy to consider arguments regarding Sims' family circumstances, gave Sims' counsel an opportunity to respond. Sims' counsel then stated that although they understood the court's concerns, they viewed the state of the law on whether "family [is an] appropriate history and characteristic factor" differently. Sent. Hr'g, R.41, at PageID #156-57. Indeed, Sims' counsel stated that although every defendant before the court may have a different family circumstance, the inquiry is still proper, as the sentencing factors consider the circumstances particular to each defendant. Counsel stated that he "just wanted to make that point." *Id.* at PageID #157. Although it does not appear that an adequate objection was made after imposition of the sentence, the disagreement with the district court discussed above was made when the court's sentencing ruling was made or sought.[2] Moreover, it was made with a reasonable

---

[2] *United States v. Bostic*, 371 F.3d 865, 871 n.3 (6th Cir. 2004) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or *sought*—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." (quoting Fed. R. Crim. P. 51(b))); *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (stating that answering "no" to the

degree of specificity, as evidenced by the district court's response directly to the argument. Thus, we view the objection as having been raised with particularity at sentencing and review it for an abuse of discretion.

## III.

We find that the district court did not abuse its discretion with regard to considering Sims' family circumstances in fashioning his sentence. "[S]entencing judges 'exercise a wide discretion' in the types of evidence they may consider when imposing sentence and . . . '[h]ighly relevant— if not essential—to [their] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 480 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 246-47 (1949)). This principle is codified at 18 U.S.C. § 3661, which states that "[n]o limitation shall be placed on the information [a sentencing judge may consider] concerning the [defendant's] background, character, and conduct. . . ." The principle is also codified at 18 U.S.C. § 3553(a), which provides certain factors that sentencing courts must consider, including the "the history and characteristics of the defendant[.]" Family circumstances are an appropriate consideration by a district court as part of "'the history and characteristics of the defendant.'" *United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009) (quoting 18 U.S.C. § 3553(a)(1)); *see also United States v. Petrus*, 588 F.3d 347, 355 (6th Cir. 2009).

To avoid procedural error, the district court "must 'set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its]

---

court's *Bostic* request for remaining objections does not alter a defendant's right to appeal issues "previously raised"); *United States v. Moore*, 512 F. App'x 590, 592-93 (6th Cir. 2013) (considering an objection raised, despite counsel saying there were no objections after the sentence was imposed, where counsel made his request prior to sentencing).

own legal decisionmaking authority.'" *United States. v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). When a district court applies the Guidelines and appears to adopt "the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a)[)]," a long explanation is typically unnecessary. *Rita*, 551 U.S. at 356-57. However, the district court must address a defendant's "nonfrivolous reasons for imposing a different sentence" than the one contemplated by the district court. *Id.* at 357. How much explanation is warranted depends on the unique circumstances in each sentencing. *Klups*, 514 F.3d at 537 (citing *United States v. Liou*, 491 F.3d 334, 338 (6th Cir. 2007)).

Contrary to Sims' assertion, the district court did not exercise a blanket refusal to consider his family circumstances in fashioning his sentence. Sims is correct in stating that § 3661 does not provide sentencing courts any basis to invent a blanket prohibition against a defendant's introduction of certain types of evidence at sentencing, including a defendant's family circumstances. *United States v. Taylor*, 648 F.3d 417, 426 (6th Cir. 2011). Here, however, the district court explained how it considered Sims' family circumstances in fashioning his sentence. The court found it "difficult for [it] to grant leniency based on the wishes of the family or the desire to return to the family[,]" because, from its perspective, such circumstances "do not appear . . . to be appropriately encompassed with in the 3553(a) factors." Sent. Hr'g Tr., R. 41, at PageID #149. Still, such a view does not constitute a blanket refusal to consider Sims' family circumstances. Indeed, the court explicitly stated that it read the materials submitted by Sims' family and considered his family circumstances. Moreover, the district court analyzed how Sims' family circumstances bore on the § 3553(a) factors, in part, by noting that one who commits a crime but does not have a family may be less culpable than one who does, as the former did not put their family at risk of losing their valued family member as a result of their behavior. Importantly, the

court also stated that the letters and statements made regarding Sims' family circumstances demonstrated that Sims' had incentive to turn his life around, and the record reveals the court took this into account in sentencing Sims. The district court stated that it did not find consecutive sentences appropriate due, in part, to Sims' family circumstances, and it articulated how Sims will still have children of school age after serving the sentence imposed, such that he could be a positive force to them starting immediately upon his release. Thus, the district court's discussion of Sims' family circumstances at sentencing shows a reasoned basis for the exercise of its legal decision-making authority on the issue.

Therefore, we find no abuse of discretion and **AFFIRM** the judgment of the district court.